## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| QBE SPECIALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 1:17-cv-22 |
| v. | § § | |
| MID-WEST TRADING CO. | § § | |
| Defendant. | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND OTHER RELIEF

Plaintiff QBE Specialty Insurance Company, the lead underwriter subscribing to Policy No. GEP 9887-14 ("Plaintiff") files its Complaint for Declaratory Judgment and Other Relief ("Complaint") for the Court's consideration, and in support of the Complaint, would respectfully show the Court as follows:

### NATURE OF THE ACTION

1.      This Complaint is brought pursuant to 28 U.S.C. § 2201, and seeks a declaration of the parties' rights and obligations under the insurance contracts at issue herein.

## PARTIES

2.      QBE Specialty Insurance Company ("QBE") is a North Dakota corporation, with its headquarters at Wall Street Plaza, 88 Pine Street, Floor 4, New York, New York 10005-1835.

3.      Mid-West Trading Co. ("Defendant" or "Mid-West Trading") is a Texas corporation that can be served through its registered agent Janet P. Moody at 3641 E. Kiest Blvd., Dallas, Texas 75203.

## JURISDICTION AND VENUE

4.      The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332, as Plaintiff QBE is a citizen of the states of North Dakota and New York, USA.   Defendant Mid-West Trading is a Texas corporation.   As a result, complete diversity exists. Further, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      Venue in this district and division is proper pursuant to 28 U.S.C. §1391(b), since this is the judicial district in which the property that is the subject of the action is situated.

## INTRODUCTION

6.      This suit involves an appraisal process under a commercial property insurance policy that was tainted from the very beginning.   The Defendant's appraiser and his hand-picked umpire took a $162,965.40 amount in dispute and

parlayed it into a shocking $2,585,000.00 appraisal award. This appraisal award was the result of secret negotiations between the Defendant's appraiser and his hand-picked umpire. The appraisal award must be set aside because it was the result of accident or mistake; because the appraisers and umpire did not follow policy terms; because the Defendant's appraiser and the umpire exceeded their authority; and because the Defendant's appraiser and the umpire impermissibly made liability and coverage decisions.

## FACTUAL BACKGROUND

7.     QBE is the lead underwriter of the insurers subscribing to Policy No. GEP 9887-14 ("Policy"), issued to Mid-West Trading, covering the commercial property owned by Mid-West Trading located at 3641 E. Kiest Blvd., Dallas, Texas 75001 ("Property").

8.     On June 12, 2015, Defendant reported wind damage to roofs on the Property reportedly occurring on June 9, 2015 ("Occurrence"). There are eight buildings on the Property.

9.     At the beginning of the adjustment of Defendant's claim, Defendant presented an estimate to replace all eight roofs for $1,635,818.88. Within this amount was approximately $587,365.00 for the main lower flat roofs of Buildings A and B.

10.    Plaintiff retained the independent engineering firm Nelson Forensics to conduct a Wind Distress Evaluation.  Following inspection and testing of the roofs on the Property, Nelson Forensics concluded the modified bitumen roofs on two buildings (Buildings A and B) had sustained wind damage.  Nelson Forensics concluded none of the other six roofs had sustained wind damage.

11.    Plaintiff and Defendant reached agreement to replace the modified bitumen roofs of Buildings A and B for $438,718.20 based on an estimate prepared by Defendant's general contractor, C4 General Contractor ("C4").

12.    Plaintiff believed agreement had been reached to replace the wind damaged roofs.

13.    C4 replaced the roofs on Buildings A and B by the end of 2015. Rather than replace the roofs with modified bitumen, C4 replaced the roofs with thermoplastic polyolefin ("TPO").

14.    In January 2016, C4 presented a final invoice for $601,683.60.  The invoice added the sum of $92,637.98 in overhead and profit and $45,855.80 in commercial repair and remodeling taxes, to amounts previously agreed upon.  The agreed amount of $438,718.20 already included $67,507.06 in overhead and profit and at least $33,435.78 in commercial repair and remodeling taxes.

15.    Plaintiff took issue with the duplicative charges for overhead and profit and for taxes.  Before the validity of the C4 final invoice could be

determined, the Merlin Law Group sent the Plaintiff's independent adjuster a Notice dated February 19, 2016, pursuant to the Texas Deceptive Trade Practices Act and Texas Insurance Code (the "Merlin Demand") stating:

\* \* \*

6.  Insured retained the services of C4 General Contractor and Continental Adjusters to assist Insured with determining the scope and amount of claim and to represent Insured in negotiations with you.

7.  Insured's contractors determined that the amount of damages resulting from the covered cause of loss that occurred on the Date of Loss totaled $601,683.68.

8.  It is my understanding that Carrier agrees with the scope of damages asserted by Insured and that the only issue is price.   To date Carrier has paid Insured 226,350.40.  The nest [sic] due Insured is $375,333.28.

\* \* \*

12.  Please remit payment immediately to our address above for the total amount due of $375,333.28.

13.  With this payment Insured's claim as to the roof and building in question can be considered closed and paid in full.

16.   Within seven days of the Merlin Demand, and well before the expiration of the 60 days given to respond, Defendant, through its public adjusters, submitted a request for appraisal under the terms of the Policy.  The request for appraisal dated February 26, 2016 is attached hereto as Exhibit "A" and made a part hereof.

17.     Plaintiff hesitated to respond to the request for appraisal because the areas of disagreement had not been well defined by Defendant.

18.     Based on the Merlin Demand, it appears that all at issue was the difference between C4's final invoice of $601,653.60 and the previously agreed upon amount of $438,718.20, which amount was paid in full by Plaintiff.

19.     On March 30, 2016, Defendant designated Lewis O'Leary ("O'Leary"), with Pro Builders of North Carolina, as its appraiser.

20.     On May 31, 2016, while Plaintiff was seeking clarification of the items in dispute, O'Leary obtained the ex parte appointment of Ricardo Martinez as umpire by a Texas State District Judge.

21.     In July 2016, Plaintiff appointed Scott Morrison ("Morrison"), with Haag Engineering, as its appraiser.

22.     The appraisal was conducted in a bizarre and uncustomary fashion. The following are examples of the unorthodox appraisal process:

- O'Leary refused to give Morrison an estimate or itemization of the amount of the loss.

- O'Leary refused to conduct a joint inspection of the Property with Morrison.

- O'Leary continually instructed Martinez on action he should take as umpire.

- Martinez refused to conduct an inspection with Morrison.

- Rather, Martinez inspected the Property with C4, a company with a financial interest in the outcome of the appraisal.

- Martinez and O'Leary excluded Morrison from discussions over the scope of loss and costs to repair.

- Martinez and O'Leary signed a lump sum appraisal award for $2,585,000.00, without any itemization or explanation of the components of the award.  A copy of the Appraisal Award is attached hereto as Exhibit "B" and made a part hereof.

- When Plaintiff requested an itemization or explanation of the award, O'Leary instructed Martinez that he had no obligation to explain the award.

- O'Leary also instructed Martinez that Martinez could not remember how the award was calculated because O'Leary had the only notes of their negotiations, and O'Leary had destroyed his notes.

## APPRAISAL PROVISION

23.   The Appraisal Provision of the Policy provides as follows:

1.  Appraisal – If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.  The two appraisers will then select a competent, impartial umpire.  If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss.   If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire.   Written agreement so itemized and signed by any two of these three sets the amount of the loss

Each appraiser will be paid by the party selecting that appraiser.   Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

## FAILURE TO FOLLOW POLICY TERMS

24.     The Policy requires that the appraisers determine and state separately the amount of each loss.  The "amount of loss" includes both an identification of the loss <u>and</u> the cost to repair or replace the loss.  O'Leary never gave Morrison an estimate to repair or replace wind damaged property.  O'Leary refused to itemize or identify the losses he was contending were caused by wind and to provide the cost to repair or replace the wind damage.  Thus, there was no opportunity to agree or disagree on costs.

25.     O'Leary's failure to identify costs also prevented the appraisers from presenting an itemization of their differences on the amount of loss to the umpire. Only itemized matters in dispute were to be presented to the umpire.

26.     The appraisal award is required to be a "written agreement so itemized", signed by the umpire and one of the appraisers, which "sets the amount

of the loss". The lump sum appraisal award is not itemized, and does not express the amount of loss because it does not identify the specific property damaged by wind or provide the cost to repair or replace the damaged property.

27.     The failure to itemize the appraisal award prevents Plaintiff from applying previous payments and the deductible, and from making coverage decisions.

## THE UMPIRE AND O'LEARY EXCEEDED THEIR AUTHORITY

28.     Defendants request for appraisal covered the disagreement over the amount of C4's final invoice. At the most, this disagreement was over $162,965.40.

29.     The Merlin Demand was for $375,000.00. This included the $212,367.00 in code upgrades and recoverable depreciation paid by Plaintiff to Defendant. Therefore, according to Defendant's attorney, the only amount in controversy was $162,633.00.

30.     Incredibly, however, the appraisal award is about $2,422,000.00 more than the amount in controversy.

31.     The umpire and O'Leary had no authority to determine items that had not been claimed by Defendant as damaged by wind. The amount of the award conclusively establishes they exceeded their authority by over $2.4 million.

32.     The umpire and O'Leary had no authority to determine matters that had been agreed upon by Plaintiff and Defendant.   The amount of the award conclusively establishes they exceeded their authority by over $2.4 million.

## ACCIDENT OR MISTAKE

33.     Accident or mistake will vitiate an appraisal award.   Overt bias will vitiate an appraisal award.   The Policy requires the appraisers to be competent and disinterested.

34.     The patent excessiveness of the appraisal award compels the conclusion that the appraisal award was the result of bias, accident or mistake.

## THE AWARD IMPROPERLY DETERMINED CAUSATION

35.     When covered and uncovered causes of loss are inseparable, appraisers cannot determine causation because this circumstance creates coverage and liability issues.

36.     Nelson Forensic and Morrison asserted that the condition of many of the roofs was caused by wear and tear; faulty, inadequate or defective design, construction, maintenance and repairs; by mechanical means, and not by wind; or reflected pre-existing conditions.

37.     O'Leary instructed Martinez that it was Morrison's burden to prove the applicability of policy exclusions and that Morrison failed to do so.   To the contrary, under the doctrine of concurrent causes of loss, it is the Defendant's

burden to establish damages caused solely by wind. These are coverage issues, and cannot be determined in an appraisal.

## DECLARATIONS SOUGHT

38.    Plaintiff incorporates the foregoing paragraphs 8 - 37, as if fully set forth herein.

39.    Plaintiff seeks the following declarations from the Court:

A.    That the appraisers and umpire did not follow the terms and conditions of the appraisal provision of the Policy;

B.    That Defendant's appraiser and the umpire exceeded their authority;

C.    That the appraisal award was the result of bias, accident or mistake;

D.    That Defendant's appraiser and the umpire necessarily and improperly determined coverage issues; and

E.    That the appraisal award be set aside in its entirety.

These declarations are based upon information currently known to Plaintiff and are not necessarily the only declarations which may be necessary as discovery proceeds and the case moves towards trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, QBE respectfully prays that Mid-West Trading be cited to appear and answer herein and, upon trial, that this Court enter the following declarations:

A.    That the appraisers and umpire did not follow the terms and conditions of the appraisal provision of the Policy;

B.    That Defendant's appraiser and the umpire exceeded their authority;

C.    That the appraisal award was the result of bias, accident or mistake;

D.    That Defendant's appraiser and the umpire necessarily and improperly determined coverage issues; and

E.    That the appraisal award be set aside in its entirety.

QBE further prays that all costs of court be taxed against Defendant, and that QBE have all further relief to which it may show itself to be justly entitled at law or in equity.

/s/  Carter L. Ferguson
Carter L. Ferguson
State Bar No. 06909500
cferguson@belaw.com
Joseph F. Cleveland, Jr.
Texas State Bar No. 04378900
jcleveland@belaw.com

BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, Texas  76102-3090
Telephone:  (817) 338-1700
Facsimile:   (817) 870-2256

**ATTORNEYS FOR PLAINTIFF**